UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

WILBERTO DIAZ,

                 *Plaintiff*,

     -against-

COMMISSIONER OF SOCIAL SECURITY,

                 *Defendant*.

--------------------------------------X

**MEMORANDUM AND ORDER**

21-CV-1609(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Wilberto Diaz appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which found Plaintiff is not disabled within the meaning of the Social Security Act (the "Act") and thus not entitled to disability insurance benefits ("benefits") under Title II of the Act. Plaintiff and the Commissioner have cross moved for judgement on the pleadings. For the reasons herein, Plaintiff's motion is GRANTED, the Commissioner's cross-motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## Background

        The parties have filed a joint stipulation of relevant facts, which the Court has reviewed and incorporates herein by reference. (*See generally* ECF No. 22, Joint Stipulation of Facts

1

("Joint Stip.").)    Plaintiff was born in 1965 and worked as a warehouse worker and stockroom clerk until 2016.  (Joint Stip. at 2.)    Plaintiff filed an application for disability insurance benefits on October 20, 2016, alleging disability beginning April 1, 2016.  (ECF No. 23, Administrative Transcript, ("Tr."), at 128, 276-77.)  Plaintiff claimed he was disabled due to depression and anxiety.   (*Id.* at 122-23.)   Plaintiff's claim was denied on November 29, 2016.  (*Id.* at 150.)   On December 9, 2016, Plaintiff requested a hearing before an administrative law judge (the "ALJ").  (*Id.* at 165.)   ALJ Sommattie Ramrup held a hearing on August 14, 2018.  (*Id.* at 61.)   Plaintiff was represented by his attorney Michael G. Wagner, Esq.  (*Id.*)  Victor G. Alberigi, a vocational expert, was also present and testified at the hearing.  (*Id.*)  On December 6, 2018, the ALJ found Plaintiff not disabled as defined under the Act.  (*Id.* at 129.)

On December 11, 2018, Plaintiff sought review of the ALJ's decision with the Appeals Council.  (*Id.* at 200.)   The Appeals Council remanded the claim on July 29, 2019, for the ALJ to offer a new hearing, take any further action needed to complete the administrative record, and issue a new decision.  (*Id.* at 147-48.)   ALJ Ramrup held the second hearing on February 10, 2020.  (*Id.* at 86.)   Plaintiff was represented by his attorney Percel Williams, Esq.   (*Id.*)  Andrew Vaughn, a vocational expert, was also present and testified.  (*Id.*)  On March 3, 2020, the ALJ found

2

Plaintiff was not disabled prior to January 25, 2020. (*Id.* at 38.)  The ALJ, however, found Plaintiff was disabled beginning January 25, 2020, the day he became a person of "advanced age", that is, greater than 55 years old, pursuant to  20 CFR § 404.1563(e), and  continues to be disabled. (*Id.*)  Plaintiff again sought review with the Appeals Council of the denial of disability prior to January 25, 2020 (ECF No. 22, Joint Stip. at 1), which was denied on December 17, 2020, thereby making the ALJ's decision the final decision of the Commissioner.  (ECF No. 23, Tr. at 11.)

On March 26, 2021, Plaintiff filed the instant action in federal court appealing the Commissioner's final decision.  (*See* ECF No. 1, Complaint.)  On February 23, 2022, the completed set of both parties' motion papers was filed.  (*See* ECF Nos. 17-18, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."); 19-20, Defendant's Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion ("Def. Mem."); 21, Plaintiff's Reply  Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Reply Mem.").)[1]

## **Legal Standard**

---

[1] Defendant did not file a reply brief.

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their application for benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).

"The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted). If there is substantial evidence in the

record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

To receive disability insurance benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32. The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner set forth a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of "disabled". *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the
> claimant is not working, (2) that he has a 'severe
> impairment,' (3) that the impairment is not one
> [listed in Appendix 1 of the regulations] that
> conclusively requires a determination of
> disability, and (4) that the claimant is not
> capable of continuing in his prior type of work,
> the Commissioner must find him disabled if (5)
> there is not another type of work the claimant can
> do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4). During this five-step process, the Commissioner must consider whether "the combined effect of all of [a claimant's] impairments," including those that are not severe, would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c). Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2).

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted). "However, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (internal

quotation marks and alteration, and citations omitted).  "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform [his] past relevant work [and considering his residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)) (alterations in original).

## Discussion

I.    **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim using the five-step sequential evaluation process, as mandated by the Act's implementing regulations.  (ECF No. 23, Tr. at 29-30.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 1, 2016.  (*Id.* at 30.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: left ventricular systolic dysfunction and adjustment disorder with mixed anxiety and depression.  (*Id.*)  The ALJ concluded the Plaintiff's prostate hypertrophy is a non-severe impairment that does not result in any complication or functional limitation.  (*Id.*)

At step three, the ALJ determined that the Plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (*Id.* at 31.)  Specifically, the ALJ found that Plaintiff's impairments did not meet the criteria of Listings 4.02 and 12.04.  (*Id.*)  First, the ALJ determined that Plaintiff's left ventricular systolic dysfunction did not qualify under Listing 4.02, chronic heart failure, because Plaintiff did not have persistent symptoms of heart failure which very seriously limit his ability to actively initiate, sustain, or complete activities of daily living; three or more separate episodes of acute congestive heart failure within a consecutive 12-month period; or an inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less.  (*Id.*)  Second the ALJ concluded that the severity of Plaintiff's symptoms, singly or in combination, did not meet or medically equal the criteria of Listing 12.04 because they did

not satisfy the "paragraph B" criteria or "paragraph C"
criteria.  (*Id.*)

At step four, the ALJ concluded that Plaintiff had the
residual functional capacity to perform light work[2], with the
following limitations: Plaintiff can perform simple routine work
at all levels of exertion; can frequently interact with
supervisors and occasionally with coworkers and members of the
public; and cannot perform a job with a strictly enforced
production quota.  (*Id.* at 32.)  The ALJ determined that
Plaintiff has been unable to perform any of his past relevant
work since April 1, 2016.  (*Id.* at 36.)

At step five, the ALJ noted that on January 25, 2020,
Plaintiff's age category changed from approaching advanced age
to advanced age when he turned 55 years old.  (*Id.* at 36.)  The
ALJ concluded that there were jobs that existed in significant
numbers in the national economy that Plaintiff could perform
despite his restrictions and before he turned 55 years old.
(*Id.* at 37.)  The vocational expert testified at the February
10, 2020 hearing that Plaintiff could perform the requirements

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds.  Even though the
weight lifted may be very little, a job is in this category when it requires
a good deal of walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls.  To be considered
capable of performing a full or wide range of light work, you must have the
ability to do substantially all of these activities.  If someone can do light
work, we determine that he or she can also do sedentary work, unless there
are additional limiting factors such as loss of fine dexterity or inability
to sit for long periods of time."  20 C.F.R. § 404.1567(b).

of representative occupations such as housekeeper, clerical assistant, and street cleaner.  (*Id.*)  Accordingly, the ALJ found that Plaintiff was not disabled prior to January 25, 2020.  Beginning January 25, 2022, however, the ALJ found that Plaintiff was disabled because there are no jobs in the national economy that Plaintiff could perform based on his advanced age, pursuant to 20 CFR § 404.1563(e).  (*Id.* at 38.)

## II.  The ALJ's Evaluation of the Treating Psychiatrist's Opinion

Plaintiff challenges the ALJ's RFC determination based on the ALJ's failure to afford controlling weight to the treating psychiatrist's opinions.  (ECF No. 18, Pl. Mem. at 1.)  The ALJ gave "partial weight" to the two opinions provided by treating psychiatrist, Dr. Delia Jano ("Dr. Jano") and "partial weight" to the opinion of the consultative examiner, Dr. Tiffany Sylvestre ("Dr. Sylvestre").  (ECF No. 23, Tr. at 35-36.)  The ALJ also noted that Plaintiff underwent a comprehensive mental assessment with Dr. Valis Whittington ("Dr. Whittington") at Woodhull Hospital but did not assign controlling weight to any of Dr. Wittington's mental status evaluations in the record.  (*Id.* at 34.)  Plaintiff contends that the ALJ did not give appropriate weight to treating psychiatrist Dr. Jano, and if the ALJ had, she would have determined Plaintiff was disabled.  (*See* ECF No. 18, Pl. Mem. at 6.)

### A. Treating Physician Rule

10

Under the treating physician rule, a "treating source's opinion on the issue of the nature and severity of a [claimant's] impairment(s) will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess*, 537 F.3d at 128); 20 C.F.R. §§ 404.1527(c)(2).[3] *See Molina v. Colvin*, No. 13-cv-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (finding the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record").

An ALJ who does not accord controlling weight to the treating physician's medical opinion must still consider the various *Burgess* factors to determine how much weight to give to the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the amount of medical evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a

---

[3] In this action, because Plaintiff's initial application for disability and disability insurance benefits was filed before regulatory amendments on March 27, 2017, the recent changes reflected in C.F.R. § 404.1520c do not apply, and under C.F.R. § 404.1527(a)(2)(c), the treating source's opinion is generally assigned added or controlling weight, absent substantial contrary evidence.

specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Burgess*, 537 F.3d at 128); *see* 20 C.F.R. § 404.1527(c)(2); *see also Adukpo v. Berryhill*, 19-cv-2709 (BMC), 2020 WL 3410333, at *1 (E.D.N.Y. Jun. 22, 2020).

"The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 74 (2d Cir. 2013) (quoting *Burgess*, 537 F.3d at 129).  The regulations also require that the ALJ set forth "good reasons for not crediting the opinion of the treating provider." *Cervini v. Saul*, 17-cv-2128 (JMA), 2020 WL 2615929, at *5 (E.D.N.Y. May 21, 2020) (citing *Schaal*, 134 F.3d at 496, 503 (2d Cir. 1998)).  Good reasons "reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." *Abate v. Comm'r*, 18-cv-2040 (JS), 2020 WL 2113322, at *4 (E.D.N.Y. May 4, 2020); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").  Further, "[t]he failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

**B. Medical Opinion of Dr. Delia Jano**

12

In assessing the extent of Plaintiff's limitations due to his adjustment disorder with mixed depression and anxiety, the ALJ assigned "partial weight" to the two opinions of Dr. Jano, dated August 7, 2018, and September 26, 2019, which found that Plaintiff had "marked" limitation in his ability to maintain attention and concentration for extended periods of time. (ECF No. 23, Tr. at 35, 571, 586.)  Dr. Jano assessed that Plaintiff's symptoms cause a "moderate-to-marked" interference with Plaintiff's ability to interact with the public, accept instructions, and respond appropriately to criticism. (*Id*. at 571, 586.)  The ALJ acknowledged that Dr. Jano is Plaintiff's treating psychiatrist, but discounted Dr. Jano's opinions noting that the mental status evaluations from her showed "grossly intact" memory, attention, and concentration. (*Id*. at 35.)  The ALJ also reasoned that Dr. Jano's opinion was "inconsistent with the claimant's reports at the evaluation that he spent time with his sisters and wife." (*Id*. at 35.)

The Court finds that the ALJ committed legal error by affording insufficient weight to Dr. Jano's opinion for several reasons, which taken together, justify a remand.  First, the ALJ incorrectly "imposed [her] own notion" and medical judgment over that of the treating psychiatrist's opinions, by finding that the severity of Plaintiff's alleged mental impairments were

13

contradicted by a few mental status evaluations showing "grossly intact" memory, attention, and concentration.  (*Id.* at 35); *Shaw v. Carter*, 221 F.3d 126, 134-35 (2d Cir. 2000).  "In the context of the old treating physician rule, the Second Circuit has signaled that it may be especially important to give weight to treating physicians regarding mental health opinions because records of mental health diagnoses may be less clear than actual consultations." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, at *884-85 (D. Vt. 2021) (citing *Flynn v. Comm'r of SS*, 729 F. App'x 119, 122 (2d Cir. 2018) ("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs.  Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Furthermore, the ALJ failed to explicitly apply the factors in *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008), as required by the Second Circuit in *Estrella*.  925 F.3d at 95-96.  Specifically, with mental health treatment, the ALJ failed to attempt to "reconcile" or "grapple with" the apparent longitudinal inconsistencies in Plaintiff's records regarding mental health.  *Id.* at 434.  Dr. Whittington's mental status evaluations from treating Plaintiff before, during, and after the evaluations conducted by Dr. Jano, all demonstrated that

14

Plaintiff had a more severe condition than consultative examiner, Dr. Sylvestre's, mental status evaluations show. (ECF No. 23, Tr. at 530-37, 1040-41, 1175-76, 1240-41, 1255, 1631, 1641, 1983, 2014, 2041.) Dr. Whittingham's evaluations are consistent with Dr. Jano's opinions regarding Plaintiff's ability to concentrate, pay attention, and remember, but the ALJ did not provide an explanation for disregarding Dr. Whittingham's substantial evaluations in her report. (*Id.* at 34-35, 571, 586.) Here, the ALJ did not consider the entirety of Plaintiff's record and improperly "cherry-picked" which mental evaluations of Dr. Jano's to highlight to support her decision. *Jacobs v. Saul*, 482 F. Supp. 3d 23, 27–28 (E.D.N.Y. 2020) ("The ALJ is not permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight.") (citing *McGill v. Saul*, No. 18-CV-6430, 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020)); *Sena v. Berryhill*, No. 17-CV-912, 2018 WL 3854771, at *9 (D. Conn. Aug. 14, 2018) ("It is well-settled that an ALJ may not 'cherry-pick' evidence by 'improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'") (quoting *Rodriguez v. Colvin*, No. 13-CV-1195, 2016 WL 3023972, at *2 (D. Conn. May 25, 2016)).

Moreover, though Plaintiff was in partial remission, treatment notes from both Dr. Jano and Dr. Whittingham diagnosed Plaintiff's "recurrent major depressive disorder" and increasing anxiety towards the end of 2019. (*Id.* at 1175-76, 1600, 2041.) In *Estrella*, district courts were cautioned against relying on a select few mental status evaluations because mental illness can occur in "cycles of improvement and debilitating symptoms." *Estrella*, 925 F.3d at 97 (citation omitted). Lastly, the ALJ also overlooked that Dr. Jano based her opinions on her entire treatment history with Plaintiff, from 2016 onward, which considered Plaintiff's past symptoms and any improvements. (ECF No. 23, Tr. at 35-36, 572, 587.) The ALJ's first report afforded "great weight" to Dr. Jano's opinion. (*Id.* at 138.)

In the ALJ's second report, the 2018 consultative examination by Dr. Sylvestre was cited by the ALJ as a basis for discounting Dr. Jano's opinion. (*Id.* at 35.) This is particularly relevant because the mental status evaluations by Dr. Sylvestre only show snapshots of Plaintiff's mental status in 2018, and not the preceding years. The Court again emphasizes that the Commissioner's regulations state that the "level of [mental] functioning may vary considerably over time," and suggest the ALJ should examine longitudinal evidence from relevant sources. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D2. By relying only on mental status evaluations from

16

2018, the ALJ erred in discounting and assigning "partial weight" to Dr. Jano's opinion.  "[I]t is [also] well established that the ALJ should not rely on a consultive examiner's opinions after a single examination over a treating physician." *Syska v. Saul*, 19-cv-7212 (KAM), 2021 WL 2190986, at *6 (E.D.N.Y. May 31, 2021) (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). Dr. Jano has considerably more insight into Plaintiff's symptoms and related limitations from her years-long treating relationship than Dr. Sylvestre does from a one-time consultative examination of Plaintiff.

Furthermore, the Second Circuit amplified its opinion in *Estrella* and cautioned ALJ's against using mental status evaluations alone to draw conclusions about the weight afforded to treating physicians. *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 11 (2d Cir. 2020).  In *Stacey*, the Second Circuit noted that "It would be improper to rely on these mental status evaluations to conclude that Stacey is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.  Neither we nor the ALJ may 'substitute [our] own expertise or view of the medical proof for the treating physician's opinion.'" *Stacey*, 799 F. App'x at 11 (quoting *Shaw*, 221 F.3d at 134.)  The ALJ focused on Dr. Jano's note about Plaintiff's memory, concentration, and attention as

"grossly intact" but did not discuss everything else encompassed in Dr. Jano's record.  (ECF No. 23, Tr. at 35.)  By relying on these "normal" mental status evaluations alone to refute other aspects of Dr. Jano's evaluations, the ALJ improperly substituted her own medical opinion for that of the treating physician.  *See Shaw*, 221 F.3d at 134-35.  As previously noted, "[t]he substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'"  *Brault*, 683 F.3d at 448 (citations omitted).  Here, the Court finds that a reasonable factfinder would have to conclude that the rest of Dr. Jano's treatment notes and opinion constitute substantial evidence inconsistent with Dr. Jano's few mental status evaluations that note some of Plaintiff's mental functions are "grossly intact."  Accordingly, the few mental status evaluations by Dr. Jano upon which the ALJ relies, do not constitute substantial evidence from which a treating psychiatrist can be discounted.

The Court turns to the remaining reason the ALJ gave for discounting Dr. Jano's opinion: Plaintiff's activities of daily living.  The ALJ erred by mischaracterizing evidence of Plaintiff's daily living activities when concluding that Dr. Jano's opinion was inconsistent with substantial evidence in the record.  Specifically, the ALJ noted that Dr. Jano's opinion

18

that Plaintiff had "none to marked" limitations in social interactions was inconsistent with Plaintiff's reported ability to spend time with his wife and family.  (ECF No. 23, Tr. at 35.)  The ALJ also cited evidence suggesting Plaintiff could provide care for his disabled wife, watched television, and could perform his own self-care.  (*Id.* at 36.)

Though Plaintiff's activities during the alleged disability period can be relevant in the determination of the severity of a mental or physical impairment, this is not the case here.  *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (finding that ALJ properly relied on claimant's reported daily activities in concluding that the claimant could perform some work).  The evidence in the record shows that Plaintiff lives with his wife, spent time with his sisters, and interacted with his family on holidays.  (ECF No. 23, Tr. at 63, 537, 1249, 1646, 1983, 2041.)  He accompanied his wife to doctor's appointments and provided some care for her.  (*Id.* at 66, 1983.)  If there are no appointments, Plaintiff testified that he stayed in his room or apartment all day and watched television.  (*Id.* at 65-66, 562-63.)  Plaintiff stated that he does not cook, clean, do chores, or go shopping.  (*Id.* at 66.)

The Court finds that evidence of Plaintiff's ability to engage in periodic daily activities is insufficient for the ALJ to discount the treating physician's opinion regarding

19

Plaintiff's inability to engage in substantial gainful employment. *See Balsamo v. Chater*, 142 F.3d 75, 78 (2d Cir. 1998) (holding the plaintiff's ability to "periodically" attend church and "on an occasion" help his wife go shopping is not evidence that plaintiff could engage in these activities for sustained periods required to hold a sedentary job); *Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022)("[W]e disagree with the ALJ that Colgan's ability to engage in certain activities of daily living—such as caring for her two children, preparing meals and washing dishes, and driving to her medical appointments—provided substantial record evidence to discount Dr. Ward's medical opinion."). "[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'" *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-03568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (citation omitted*); see also Murdaugh v. Sec'y of Dep't of Health & Human Servs.*, 837 F.2d 99, 102 (2d Cir. 1988) ("[T]hat appellant receives conservative treatment, waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table is scarcely said to controvert the

medical evidence."). Even Plaintiff's ability to watch television is not substantial or sufficient evidence to discount a treating psychiatrist's findings about Plaintiff's ability to pay attention, concentrate, and remember in a workplace. *Stacey*, 799 F. App'x 7 at 10 ("We doubt that watching television—a largely passive activity—says anything at all about a claimant's ability to concentrate on even simple work tasks.")

The Court finds, for the preceding reasons, the mental status evaluations and the evidence of Plaintiff's activities of daily living, individually or in combination, do not constitute substantial evidence for the ALJ to have ignored the controlling opinions of Dr. Jano, Plaintiff's treating psychiatrist.

### C. The ALJ's Formulation of the Plaintiff's RFC

The Court finds that Plaintiff's RFC is not supported by medical evidence and a medical opinion, thus warranting a remand. "[A]n ALJ's RFC determinations must be supported by a medical opinion in the record at the time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021). "Although an RFC determination is an issue reserved for the Commissioner, the ALJ is a layperson, and as such is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *11 (N.D.N.Y. Feb.

22, 2021) (quoting *Anderson v. Comm'r of Soc. Sec.*, No. 19-CV-464-HBS, 2020 WL 5593799, at *3 (W.D.N.Y. Sept. 18, 2020)).

In the present case, the ALJ discounted and assigned "partial weight" to both Dr. Jano's treating opinion and Dr. Sylvestre's consulting opinion.  (ECF  No. 23, Tr. at 35-36.) Dr. Jano opined that Plaintiff had "moderate-to-marked" and "marked" limitations in certain areas of mental functioning, including his ability to concentrate, remember, and pay attention, which interfered with Plaintiff's overall ability to carry out these activities for up to a third of the workday. (*Id.*)  The ALJ discounted Dr. Jano's opinion using the mental status evaluations and Plaintiff's activities of daily living and found that the record supports no more than "moderate" limitations.  (Tr. at 35.)  The ALJ did not explain or evaluate the quantitative limits assigned to each of the "moderate", "moderate-to-marked", and "marked" limitations, set forward by Dr. Jano, in the Plaintiff's RFC.  (*Id.* at 35, 571, 586.)

Dr. Sylvestre observed Plaintiff had difficulty concentrating and needed questions over-explained and simplified.  (*Id.* at 561.)  Dr. Sylvestre also observed that Plaintiff's concentration and attention were intact, but also noted his confused thoughts, and mildly impaired memory.  (*Id.* at 561-62.)  Dr. Sylvestre found Plaintiff had no limitations with his ability to understand, remember, and apply simple

22

directions and a "mild" limitation with respect to complex
instructions.  (*Id.* at 563.)  Dr. Sylvestre also found Plaintiff
had "moderate" limitation "in his ability to interact adequately
with supervisors, co-workers, and the public; sustain an
ordinary routine and regular attendance at work; and to regulate
emotions, control behavior, and maintain well-being."  (*Id.*)
The ALJ also discounted Dr. Sylvestre's opinion as inconsistent
with observations made in her own examination showing Plaintiff
was confused and needed questions over-explained and simplified.
(*Id.* at 36.)  The ALJ found that the Plaintiff had more than the
"none-to-mild" limitations assessed by Dr. Sylvestre.  (*Id.*)

        The ALJ's findings of no more than "moderate"
limitations in the functional areas of understanding, memory,
concentration, and persistence are not supported by the medical
evidence and opinions.  (*Id.* at 35-36.)  The ALJ used the raw
observations from Dr. Sylvestre's one-time, consultative mental
status examination to supplant Dr. Jano's opinion and imposed
her own conclusion that Plaintiff had more than "mild"
limitations, but no more than "moderate" limitations, in the
functional areas of understanding, memory, concentration, and
persistence.  (*Id.* at 36.)  The ALJ gave more weight to the one-
time mental status findings by Dr. Sylvestre to formulate
Plaintiff's RFC.  As noted above, the Second Circuit has
"frequently cautioned that ALJs should not rely heavily on the

23

findings of consultative physicians after a single examination."
*Estrella*, 925 F.3d at 98 (citing *Selian*, 708 F.3d at 419)
(internal quotations omitted).

       With divergent medical opinions, the ALJ seemingly
split the difference between "no limitations" found by Dr.
Sylvestre and "moderate-to-marked" and "marked" limitations
found by Dr. Jano, and concluded Plaintiff had no more than
"moderate" limitations, without citing substantial evidence in
the record to support this conclusion. *See Mariani v. Colvin*,
567 Fed. App'x. 8, 11 (2d Cir. 2014) (summary order) ("Medical
evidence at both ends of the spectrum ... is not substantial
evidence for a finding that the extent of the disability is
fifty percent capacity"); *Michael S. v. Comm'r of Soc. Sec.*, No.
1:19-CV-01479-JJM, 2021 WL 856908, *8 (W.D.N.Y. Mar. 8, 2021)
(remanding where the ALJ crafted an RFC that fell in the middle
of significant limitations and non-existent limitations without
some more substantial evidence.)  Crucially, by using her lay
perspective to translate the medical findings, without the
support of a medical examiner's opinion, the ALJ erred.  On
remand, the ALJ must adequately support Plaintiff's RFC with a
medical opinion backed by substantial evidence or cite to
specific, substantial evidence for a finding of only "moderate"
limitations in the functional areas of understanding, memory,
concentration, and persistence.

Finally, the ALJ committed legal error by failing to account for limitations found by both the treating psychiatrist and the consultative examiner.  Both Dr. Jano and Dr. Sylvestre found that Plaintiff's symptoms would cause absenteeism and time off-task, but neither limitations are included in the Plaintiff's RFC, nor does the ALJ give an explanation for their omission.  (ECF No. 23, Tr. at 35-36, 563, 571, 586.)  Moreover, where medical sources have differing RFC opinions, "[a]n ALJ's failure to reconcile such materially divergent RFC opinions of medical sources is [ ] a ground for remand."  *Cabassa v. Astrue*, No. 11-cv-1449, 2012 WL 2202951, at *7 (E.D.N.Y. Jun. 13, 2012).  This is especially true where the ALJ discounts the opinion of the treating physician.  *See Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("Where an ALJ fails properly to acknowledge [the treating physician rule] or to provide 'good reasons' for the weight given to the treating physician's opinion, we do not hesitate to remand." (citation omitted)).  Accordingly, the Court remands this case based on the ALJ's failure to afford controlling weight to the treating psychiatrist's opinions in formulating Plaintiff's RFC, and failure to provide reasons for not affording controlling weight.

## III. Plaintiff's Remaining Claims

Plaintiff's remaining arguments suggest that the ALJ erred in assessing Plaintiff's credibility.  (ECF No. 18, Pl.

25

Mem. at 8-11.)  As set forth above, the Court finds that the ALJ's RFC determination was not based on substantial evidence. Specifically, the ALJ erroneously discounted part of the treating psychiatrist, Dr. Jano's opinions.  On remand, the ALJ must conduct a new evaluation of the evidence, which may alter the current administrative decision.  Because the Court has already determined that remand is appropriate for a proper evaluation of Plaintiff's treating source opinions and RFC determination, it need not address the ALJ's findings regarding Plaintiff's credibility.  *See Rosa v. Callahan*, 168 F. 3d 72, 82 n.7 (2d Cir. 1999)("Because we have concluded that the ALJ was incorrect in her assessment of the medical evidence, we cannot accept her conclusion regarding . . . credibility."); *Jeanniton v. Berryhill*, 2017 WL 1214480, at *12 (E.D.N.Y. Mar. 31, 2017); *Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 331 (S.D.N.Y. 2010) ("Because I find legal error requiring remand, I need not consider whether the ALJ's decision was otherwise supported by substantial evidence.") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, Defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**

DATED:     November 4, 2022
           Brooklyn, New York

                    _____/s/_____
                    **HON. KIYO A. MATSUMOTO**
                    United States District Judge

27